1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DONALD JEFFERSON Jr.,

            Plaintiff,

        v.

KATHY ALVES *et al.*,

            Defendants.

Case No.  C06-5479RJB

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**OCTOBER 19, 2007**

　　　This Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. § 636(b)(1)(B). Defendants have moved for summary judgment in two separate motions. Defendant Alves filed a motion for summary judgement (Dkt # 40).  The remaining defendants then filed a separate motion for summary judgment (Dkt # 43).  The Court allowed a lengthy continuance of the motions to allow plaintiff additional time for discovery (Dkt # 48).  Plaintiff has responded to the motions (Dkt # 62).  Defendants have replied (Dkt # 63).  This matter is ripe for review.

FACTS

　　　Plaintiff is an inmate currently incarcerated with the Washington State Department of Corrections. He brings these allegations regarding the medical care and treatment he received at the Thurston County Jail.  It is undisputed that plaintiff was housed in the Thurston County Jail from approximately November 16, 2005, till November 15, 2006.  Plaintiff alleges he was denied adequate medical care for chronic pain,

1  was denied adequate followup care for cancer treatment he had undergone,  that his medical treatment was

2  interfered with, and he was retaliated against for filing grievances.

3        Defendant Kathleen Alves is an Advanced Registered Nurse Practitioner, ARNP.  The claims

4  against her deal with the adequacy of medical care provided. Ms. Alves provided medical care to the

5  plaintiff From February 2, 2006 when he first requested to see medical personnel until September 15, 2006,

6  approximately two months before plaintiff left the Jail.  Defendants Alves outlines the times she saw

7  plaintiff, what his complaints were, and what care she prescribed (Dkt. # 42, declaration of Kathleen

8  Alves).  She describes the treatment she provided as follows:

9      ....

10  2.    I first saw Donald Jefferson on February 2, 2006. Mr. Jefferson complained of left foot pain from a June 2005 boat accident and informed me that he sometimes wore an ankle brace. He also told me that he crushed his right hand with an automobile transmission in October 2005.

    During this visit he complained of right kidney pain with deep breathing. I performed a urinalysis and no blood was found to indicate an infection.

    Mr. Jefferson did not ask for any follow-up for his renal cancer during this visit. His concerns related to his shoes, his right hand and a request for pain medication.

    On this visit he was prescribed Motrin 400 mg twice a day and cautioned about potential side effects. He took 11 doses out of a possible 40 doses over the 20 day period the prescription was in effect. The prescription expired on February 22, 2006. Mr. Jefferson never informed me that the medication was not working.

19  3.    On February 14, 2006, Mr. Jefferson received an inmate physical examination related to his request to become a trustee at the jail. He was not approved for this duty because of his issues with back, leg and hand pain.

21  4.    On March 12, 2006, Mr. Jefferson complained of a swollen right elbow. His bedding was changed and there were no reported continuing problems.

23  5.    On [March 23, 2006], Mr. Jefferson complained that he had broken fingers on both hands and his nose during an altercation. His nose had a laceration that was cleansed and bandaged. A x-ray of the nose and both hands was ordered.

24  6.    Also on [March 23, 2006], Mr. Jefferson was seen with complaints of chest pain. His condition was stable.

26  7.    On May 24, 2006, Mr. Jefferson's x-rays were read as normal with no fractures to his hands and nose. A chest x-ray was within normal limits.

8.    Also on May 24, 2006, the bandage on Mr. Jefferson's nose was changed.

9.    On June 7, 2006, Mr. Jefferson was prescribed Tylenol 500 mg 3 times per day. He

took 25 out of a possible 60 doses over the next 20 days.

10    On July 13, 2006, I reviewed a filed grievance by Mr. Jefferson wherein he complained that he was not being given Vicodin for pain.

11.    On July 14, 2006, Mr. Jefferson had a renal CT scan that was within normal limits.

12.    On July 17, 2006, I responded to Mr. Jefferson's grievance by explaining that he had been treated in my medical judgment appropriately with Motrin, Tylenol and Salsalate. I further explained that there was no record that he had a valid, ongoing prescription for Vicodin prior to his incarceration.

13.    Also on July 17, 2006, I prescribed Ultram and Percogesic for pain management.

14.    On August 7, 2006, Mr. Jefferson requested medication for chronic low-back pain. He was prescribed Motrin 600 mg once per day. He took 6 out of a possible 9 doses.

15.    On August 10, 2006, Mr. Jefferson refused a blood draw that was intended to assess his medical condition.

16.    On September 1, 2006, Mr. Jefferson refused a chest x-ray that was intended to assess his medical condition.

17.    On September 15, 2006, I re-prescribed Ultram 100 mg 3 times daily for 20 days. Mr. Jefferson was referred to Dr. Baldarama [sic], the jail's primary physician, for follow-up.

(Dkt. # 42, declaration of Kathleen Alves).

Dr. Balderrama[1] is a M.D.  He provided medical treatment to plaintiff from May 24, 2006, till November 15, 2006 (Dkt. # 44, declaration of Dr. Balderrama).   The allegations against him are that he did not adequately address Mr. Jefferson's pain issues by refusing to prescribe Hydrocodone and that he improperly delayed cancer treatment followup. Dr. Balderrama describes the treatment he provided as follows:

    ....

    2.    I first saw Donald Jefferson in the medical clinic on May 24, 2006.  I saw him for injuries he sustained in an altercation with another inmate.  Mr. Jefferson also indicated that he had a history of renal cancer.  At that time records regarding his cancer treatment were not available.

    3.    Once the records of his cancer treatment were obtained I ordered an abdominal CT scan. Mr. Jefferson had a renal scan on July 14, 2006.  The results of the abdominal scan were reviewed by a board certified radiologist and I reviewed his report.  I met with Mr. Jefferson on July 19, 2006 and

_____

[1]    There are two spellings for this defendants last name, Baldarama and Balderrama.  As he signed his affidavit Balderrama the court will use that spelling except when quoting material.

informed him that the CT scan was in normal limits and there was no indication of new lesions or other signs that the cancer had reoccurred. Since there were no abnormal findings there was no reason to refer Mr. Jefferson to a specialist.

4.     I saw Mr. Jefferson on eight occasions and he usually complained of lower back pain.  Mr. Jefferson had been prescribed Ultram by ARNP Kathe[sic] Alves.  On August 16, 2006, Mr. Jefferson indicated that he had previously been on Hydrocodone and wanted to be put back on that medication.  I declined to prescribe Hydrocodone because in my experience I have found poor outcomes with chronic use of Hydrocodone.  I prescribed Tramadol for Mr. Jefferson which in my experience is effective for chronic pain.

(Dkt. # 44).

Defendant Patti Smith is a sergeant at the jail.  The allegations against her are that she interfered with medical treatment by removing orthopedic shoes that had been prescribed for the plaintiff.  Sergeant Smith describes her actions as follows:

....

2.     On February 6, 2006, ARNP Kathe Alves authorized letting Donald Jefferson have ortho brace shoes as long as there was not a security issue.  I did not inspect the shoes, they were approved by another officer.

3.     On May 23, 2006, inmate Jefferson was placed in H Tank, a maximum security unit in the Thurston County Corrections Facility as a result of assaultive behavior by inmate Jefferson.  At that time his shoes were taken away from him as inmates in H Tank are not allowed to have any type of footwear other than jail issued sandals because of security concerns.  Inmate Jefferson's shoes were in fact athletic shoes and not orthopedic shoes.

4.     Inmate Jefferson was seen by Dr. Balderrama on May 24, 2006, primarily for the injuries he sustained in the altercation with another inmate.  Dr. Balderrama did not give me orders to return inmate Jefferson's shoes.  I had no reason to believe that taking away inmate Jefferson's shoes while he was in maximum security presented any serious medical problem.  If I had been instructed by Dr. Balderrama to return inmate Jefferson's shoes, I would have complied with those orders.

5.     When inmate Jefferson left maximum security his shoes were returned to him.

6.     In his complaint, inmate Jefferson alleges that I had some input into his medication.  Decisions regarding medication are made by medical staff.  I do not have authority to prescribe or recommend medication for inmates.  I follow the orders of medical staff with regards to inmate medications.

(Dkt. # 45, declaration of Patti Smith).

Plaintiff was infracted for not taking medication given to him on pill line.  The infraction was heard by Sergeant Claude Belcher.  Sergeant Belcher is named as a defendant for allegedly conspiring to retaliate

against plaintiff for the grievances he filed.  Plaintiff was found guilty of the infractions and given a
sanction of ten days lock down with three days suspended.  (Dkt. # 46, declaration of Claude Belcher).

The officer who infracted Mr. Jefferson for not taking his medication, Clarence Guill, is also a
named defendant.  His declaration outlines his observations and actions with regards to that incident (Dkt.
# 47, declaration of Clarence Guill).  He states:

> ....
>
> 2.   On July 21, 2006, while conducting medication call, inmate Donald Jefferson
>      came to the main door of "E" Unit and received his medications through the
>      port hole.  It appeared to me that inmate Jefferson pretended to put his
>      medication in his mouth and then turned his back to Nurse Walck and me.
>      He put what I believe to be his medication in his shirt pocket.
>
> 3.   Corrections Deputy Cartino and I opened the main door and confronted
>      inmate Jefferson about putting the medications in his pocket.  As he was
>      walking up the stairs with his back to us he was observed taking what
>      appeared to be his medication out of his pocket and putting the medication
>      in his mouth.
>
> 4.   When I ordered him to come down the stair and show us what was in his
>      pocket and in his mouth, he refused.  I again ordered him to come back
>      down the stair and he continued to go to his cell.
>
> 5.   I submitted a report indicating that inmate Jefferson had misused his
>      medications and refused to obey an order.

(Dkt. # 47, declaration of Clarence Guill).

Mr. Jefferson and the defendants disagree about a number of facts. The parties disagree if
defendant Smith was present when ARNP Alves allowed plaintiff to have special shoes on February 6,
2006.  The parties disagree as to who inspected the shoes prior to them being given to the plaintiff.
Defendant Smith maintains the shoes she took from plaintiff in May of 2006, after plaintiff was in an
altercation with another inmate, were athletic shoes and not orthopedic shoes.  She indicates she was not
present when the shoes were inspected in February of 2006, (Dkt # 45).  Defendant Smith avers persons in
H Tank are not allowed any shoes except the sandals provided by the jail.  She avers this is a security issue.
Plaintiff counters that he was in H Tank for three months prior to the May 2006, incident and allowed to
have his shoes.  He maintains his shoes were taken in retaliation for his filing grievances.  The defendants
and plaintiff also disagree whether plaintiff has an ongoing prescription for Hydrocodone when he was sent
to the jail.  Plaintiff has submitted the prescription he claims was on going because it has an expiration date
of January 24, 2006, (Dkt. # 62, exhibit 2).  Contrary to Mr. Jefferson's claims, the prescription is not

open ended.  The prescription is for 30 tablets of Hydrocodone and was issued August 3, 2005.  Mr. Jefferson is directed to take 1 or 2 tablets every 3 to 4 hours and not to exceed 8 tablets per day.  No refills of the prescription are authorized.  The prescription itself expires January 24, 2006, (Dkt. # 62, exhibit 2).

While Mr. Jefferson disagrees with several points made by the defendants, he does not contest the following information:

1.   Cancer followup care.

Dr. Balderrama ordered plaintiff's cancer records when he first saw plaintiff on May 24, 2006.  This is best evidenced by plaintiff's signing a release of information on May 24, 2006 so the medical records from California could be obtained (Dkt. # 62, exhibit 22).  Within two months records were received and reviewed, a CT scan was scheduled and conducted, and results were read by a radiologist who prepared a report that was forwarded to Dr. Balderrama and shared with plaintiff on July 19, 2006.

2.   Pain medications.

When defendant Alves first saw the plaintiff on, February 2, 2006, plaintiff did not complain that he needed further cancer treatment or followup treatment for his cancer.  Plaintiff was prescribed Motrin 400 for chronic pain and at no time during the 20 days this prescription was in effect did Mr. Jefferson complaint to defendant Alves that the medication was not working. Plaintiff does indicate he complained by filing grievances, but the first grievance regarding pain medication not working that is before the court is dated June 6, 2006, four months after the Motrin was prescribed (Dkt. # 62, exhibit 6).  Defendant Alves prescribed a different pain medication, Tylenol 500 mg 3 times per day on June 7, 2006, (Dkt. # 42, declaration of Alves).  On July 13, 2006, plaintiff filed a grievance regarding the pain medication not working. Within four days defendant Alves again switched the medication, this time to Ultram and Percogesic (Dkt. # 42).

Dr. Balderrama first saw plaintiff on May 24, 2006.  Dr. Balderrama switched plaintiff's pain medication from Ultram to Tramadol (Dkt. # 44).

3.   Shoes.

It is undisputed that in May of 2006, plaintiff was in an altercation with another inmate, he was injured, and his shoes were taken on the order of Sergeant Smith the day of the altercation.  Plaintiff did not complain to medical staff about the taking of his shoes, and Sergeant Smith was not ordered to return

1    the shoes.  Further, it is uncontested that plaintiff was in the Thurston County Jail from approximately

2    November 16, 2006, until February 6, 2006, without his orthopedic shoes.

3            4.          Retaliation.

4            Plaintiff alleges the taking of his shoes was not only cruel and unusual punishment, but also violated

5    the First Amendment and was an act of retaliation.  He also alleges the infraction for not taking his

6    medication and sanction were retaliatory. However the record reflects that Deputy Clarence Guill observed

7    plaintiff fake putting his medicine in his mouth and placing it in his pocket.  Further, Deputy Guill states

8    that when confronted plaintiff removed the pills from his pocket and swallowed them finally, Deputy Guill

9    states he observed plaintiff refuse a direct order to return to the bottom of a stairwell and instead he went

10   to his cell (Dkt. # 47, declaration of Guill).

11                          THE STANDARDS OF REVIEW.

12           A.          Summary Judgment.

13           Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings,

14   depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there

15   is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed.

16   R. Civ. P. 56 (c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails

17   to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden

18   of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

19           There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational

20   trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

21   586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

22   metaphysical doubt.").  See also Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute over a material fact

23   exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve

24   the differing versions of the truth.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec.

25   Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

26           The determination of the existence of a material fact is often a close question.  The court must consider

27   the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the

28   evidence in most civil cases.  Anderson, 477 U.S. at 254; T.W. Elec. Service Inc., 809 F.2d at 630.  The court

1    must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts

2    specifically attested by the party contradicts facts specifically attested by the moving party. Id.

3        The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in

4    hopes that evidence can be developed at trial to support the claim.  T.W. Elec. Service Inc., 809 F.2d at

5    630.(relying on Anderson, supra).  Conclusory, nonspecific statements in affidavits are not sufficient, and

6    "missing facts" will not be "presumed."   Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

7        B.    Medical Claims.

8        This claim involves a pretrial detainees right to medical treatment.  As Mr. Jefferson was a pretrial

9    detainee defendant Alves notes:

10           In the present case, Plaintiff claims that Defendant Alves denied or delayed medical
             care to him while he was incarcerated at Thurston County Corrections Facility.
11           Accordingly, his claims are analyzed under the Fourteenth Amendment Due Process Clause,
             rather than the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979).
12           However, because pretrial detainees' rights under the Fourteenth Amendment are
             comparable to prisoners' rights under the Eighth Amendment the same standards are
13           applied. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998); Redman v. County of San
             Diego, 942 F.2d 1435, 1441 (9th Cir. 1991). The Eighth Amendment requires prison
14           officials to take reasonable measures to guarantee the health and safety of inmates. Hudson
             v. Palmer, 468 U.S. 517, 526-27 (1984); Farmer v. Brennan, 511 U.S. 825, 834 (1994). An
15           inmate claiming an Eighth Amendment violation relating to health care must show that the
             prison officials acted with deliberate indifference to a serious medical need. Estelle v.
16           Gamble, 429 U.S. 97, 104 (1976). The plaintiff must prove both an objective and a
             subjective component. Hudson v. McMillan, 503 U.S. 1 (1992); McGuckin v. Smith, 974
17           F.2d 1050, 1059 (9th Cir. 1992). First, the alleged deprivation must be, objectively,
             "sufficiently serious." Farmer, 511 U.S. at 834. A "serious medical need" exists if the failure
18           to treat a prisoner's condition would result in further significant injury or the unnecessary
             and wanton infliction of pain contrary to contemporary standards of decency. Helling v.
19           McKinney, 509 U.S. 25, 32-35 (1993). McGuckin, 974 F.2d at 1059. Second, the prison
             officials must be deliberately [sic] indifferent to the risk of harm to the inmate. Farmer, 511
20           U.S. at 834. An official is deliberately indifferent to a serious medical need if the official
             "knows of and disregards an excessive risk to inmate health or safety." Id. at 837.
21           Deliberate indifference requires more culpability than ordinary lack of due care of a
             prisoner's health. Id. at 835. In assessing whether the official acted with deliberate
22           indifference, the court's inquiry must focus on what the prison official actually perceived,
             not what the official should have known. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th
23           Cir. 1995). If one of the components is not established, the court need not inquire as to the
             existence of the other. Helling, 509 U.S. 25.
24
25    (Dkt. # 40, pages 4 and 5).  The court agrees with and adopts this statement of the law.

26        C.    Retaliation.

27        To state a § 1983 claim based on retaliation, plaintiff must allege (1) the type of activity engaged in

28    was a protected right under the constitution; and (2) the State impermissibly infringed on the right to

      engage in the protected activity.  Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985).  Plaintiff also must

1    establish that the retaliatory act does not advance legitimate penological goals, such as preserving

2    institutional order and discipline.  Id.; Barnett v. Centoni, 31 F. 3d 813, 816 (9th Cir. 1994)./

3                                       DISCUSSION

4        1.       CT scan for cancer.

5        Plaintiff's claims relating to this issue fail as a matter of law.  Plaintiff has not contradicted defendant

6    Alves's assertion that he did not seek treatment for this condition when he first entered the facility or when he

7    was first treated by defendant Alves on February 6, 2006, (Dkt # 42, declaration of Kathleen Alves).  Further,

8    when Dr. Balderrama learned of plaintiff's concerns on May 24, 2006, he had plaintiff fill out a release of

9    information form and obtained the medical files from California, (Dkt # 62, exhibit 22).  Once the records were

10   obtained and reviewed a CT scan was scheduled.  The scan took place July 14, 2006, the results were

11   interpreted by a board-certified radiologist who prepared a report.  Dr. Balderrama received the report and

12   shared the information on it with plaintiff on July 19, 2006.

13       While plaintiff complains of the delay in obtaining a CT scan, he has placed no evidence before the

14   court to show he ever requested treatment and that treatment was denied.  He has not shown deliberate

15   indifference.  At most, plaintiff shows a delay in obtaining care.  But he fails to show he suffered any injury as

16   a result of that delay.  The government has an obligation to provide medical care for prisoners, and the

17   Eighth Amendment proscribes deliberate indifference to their serious medical needs.  Estelle v. Gamble,

18   429 U.S. 97 (1976),  Such conduct is actionable under 42 U.S.C. § 1983.  McGuckin v. Smith, 974 F.2d

19   1050, 1059 (9th Cir. 1992).

20       In order to establish deliberate indifference, plaintiff must show a purposeful act or failure to act on

21   the part of the defendant.  McGuckin, at 1060.  A difference of opinion between a prisoner and medical

22   authorities regarding proper medical treatment does not give rise to a 42 U.S.C. § 1983 claim.  Franklin v.

23   Oregon, State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981).  Mere negligence in diagnosing or

24   treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.

25   Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). Further, a prisoner can make no claim for

26   deliberate medical indifference unless the denial was harmful.  McGuckin, at 1060; Shapely v. Nevada Bd.

27   of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  Plaintiff fails to show any harm as a result of

28   the delay in obtaining a followup CT scan.  This claim fails.

In an attempt to show injury plaintiff points to the mental anguish he endured until the CT scan results were made known to him. Pursuant to 42 U.S.C. § 1997(e), no federal civil action may be brought by a prisoner for mental or emotional injury suffered while in custody without a prior showing of physical injury. Plaintiff has no physical injury related to this claim. Defendants motions for summary judgment should be **GRANTED.**

       2.   <u>Pain Medication</u>.

When plaintiff first complained of pain in February of 2006, he was prescribed Motrin. (Dkt. # 42, declaration of Kathleen Alves). There is nothing in the record to show plaintiff complained the treatment was not effective until June 6, 2006 when plaintiff filed a grievance concerning his pain medication not working (Dkt. # 62, exhibit 6). Defendant Alves prescribed a different pain medication, Tylenol 500 mg 3 times per day one day later on June 7, 2006, (Dkt. # 42, declaration of Alves).

When plaintiff again complained the medication was not working in July of 2006, defendant Alves again tried a difference pain medication, Ultram and Percogesic (Dkt. # 42, declaration of Alves).

Plaintiff was also seen by Dr. Balderrama who addressed plaintiff's complaint that the pain medication was not working on his chronic back pain. Dr. Balderrama prescribed Tramadol (Dkt. # 44, declaration of Dr. Balderrama).

Plaintiff fails to show any defendant was deliberately indifferent to his medical needs. Dr. Balderrama best explains the situation when he states:

> I saw Mr. Jefferson on eight occasions and he usually complained of lower back pain. Mr. Jefferson had been prescribed Ultram by ARNP Kathe Alves. On August 16, 2006, Mr. Jefferson indicated that he had previously been on Hydrocodone and wanted to be put back on that medication. I declined to prescribe Hydrocodone because in my experience I have found poor outcomes with chronic use of Hydrocodone. I prescribed Tramadol for Mr. Jefferson which in my experience is effective for chronic pain.

(Dkt. # 44). A difference in opinion as to diagnosis or treatment does not establish a constitutional violation. <u>Shields v. Kunkle</u>, 442 F.2d 409, 410 (9th Cir. 1971). Defendants motions for summary judgment should be **GRANTED.**

       3.   <u>Shoes</u>.

Claims relating to the taking of Mr. Jefferson's Shoes raise two issues. The first is an interference with medical treatment claim and the second is a claim of retaliation. Both claims fail.

       A.   <u>Medical Claim</u>.

1    Defendant Smith alleges she did not know the shoes she was taking from plaintiff were in fact the

2    orthopedic shoes or special shoes issued by ARNP Alves.  Plaintiff disputes this statement and alleges

3    Smith was the person who inspected the shoes in February of 2006 and gave them to plaintiff. It is the

4    Court's determination that this claim does not rest on Defendant Smiths subjective state of mind.   The

5    claim fails as plaintiff fails to show the denial of his shoes caused any injury.  Wood v Housewright, 900

6    F.2d 1332 (9th Cir. 1990). Plaintiff fails to show the denial was objectively serious enough to be an Eighth

7    Amendment violation. Somers v Thurman, 109 F.3d, 614 (9th Cir. 1997).  Defendants motions for

8    summary judgment should be **GRANTED.**

9         B.    Retaliation.

10    To state a § 1983 claim based on retaliation, plaintiff must allege (1) the type of activity engaged in

11    was a protected right under the constitution; and (2) the State impermissibly infringed on the right to

12    engage in the protected activity.  Rizzo v. Dawson, 778 F.2d 527, 531 (9th Cir. 1985).  Plaintiff also must

13    establish that the retaliatory act does not advance legitimate penological goals, such as preserving

14    institutional order and discipline.  Id.; Barnett v. Centoni, 31 F. 3d 813, 816 (9th Cir. 1994).

15    Here, plaintiff fulfils the first portion of the test.  His alleged he filing of grievances is protected

16    conduct under the First Amendment.  He does not show the state impermissibly infringed on this right by

17    taking his shoes, Further, the taking of the shoes was done after he was involved in an altercation with

18    another inmate as was done as a security measure.  Plaintiff has failed to establish that allegedly retaliatory

19    act did not advance a legitimate penological goal.  Defendants motions for summary judgment should be

20    **GRANTED.**

21         4.    Infraction for misuse of medication and sanction.

22    Mr. Jefferson challenges an infraction and disciplinary hearing as retaliation. He does not challenge

23    the due process given at the hearing.  The only questions for the court are whether there was any evidence

24    to support the finding of guilt and whether the infraction and hearing advance legitimate penological goals.

25    Answering both questions in the affirmative the court recommends dismiss of this issue.

26    Officer Clarence Guill's declaration outlining his personal observations of Mr. Jefferson's conduct

27    provides some evidence of Mr. Jefferson's guilt.  The standard of review is some or any evidence to

28    support the finding of the hearings officer.  Superintendent v. Hill, 472 U.S. 445 (1985). Finding the

Report and Recommendation
Page - 11

1  plaintiff guilty of misuse of medications where he did not appear to swallow the medication and then

2  refused a direct order to return to the area furthers legitimate penological goals such as preventing selling

3  or trading medication.  As a matter of law the retaliation claim based on this infraction and finding of guilt

4  fails.  Barnett v. Centoni, 31 F. 3d 813, 816 (9th Cir. 1994). Defendants motions for summary judgment

5  should be **GRANTED.**

6                                                    CONCLUSION

7          Fore the foregoing reasons defendants motions for summary judgment should be **GRANTED.**

8  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall

9  have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.

10  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn,

11  474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set

12  the matter for consideration on **October 19, 2007**, as noted in the caption.

13

14          DATED this 24 day of September, 2007.

15

16                                  */S/ J. Kelley Arnold*
                                    J. Kelley Arnold
17                                  United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28

Report and Recommendation
Page - 12